IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JENNINGS RAY LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION,** |
| TRENTON JORDON, TIM JORDON, ) | **ORDER, AND** |
| JEFF JORDON, MONTGOMERY ) | **RECOMMENDATION** |
| COUNTY SHERIFF'S ) | |
| DEPARTMENT, and JOHN E. ) | 1:09CV21 |
| ROBINSON, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on a motion to set aside entry of default by Defendant John E. Robinson (docket no. 20), and on a motion to dismiss by Defendants John Robinson, Tim Jordon, Jeff Jordon, and the Montgomery County Sheriff's Department (docket no. 42). Plaintiff did not respond to the motion to set aside entry of default, but he has responded to the motion to dismiss (docket no. 44). Despite Plaintiff's failure to respond to both motions, the matter is ripe for disposition as the period in which to respond has lapsed and because Plaintiff has since filed an amended complaint including Defendant Robinson (docket no. 41).

For the reasons set forth below, Defendant Robinson's motion to set aside entry of default will be granted. Since the parties have not consented to the jurisdiction of the magistrate judge, Defendants' motion to dismiss must be dealt with

by way of recommendation. For the reasons discussed herein, I will recommend that the court dismiss the Montgomery County Sheriff's Department as a Defendant. It will be further recommended that the court deny the motion to dismiss Plaintiff's malicious prosecution claim with respect to Defendants Tim Jordon and John Robinson, but grant the motion with respect to Defendant Jeff Jordon. Finally, it will be recommended that the court deny Defendants' motion to dismiss Plaintiff's conspiracy claim.

**BACKGROUND**

Here, Plaintiff is suing Defendants for, among other things, malicious prosecution and civil conspiracy after Plaintiff was allegedly arrested and charged without probable cause for felony larceny of a dog. Plaintiff Jennings Ray Lewis is a resident of Montgomery County, North Carolina. Defendant Trenton Jordon is also a resident of Montgomery County. Plaintiff identifies Trenton Jordon as the individual citizen who initiated the criminal proceedings ("larceny of a dog") against Plaintiff. Defendant Jeff Jordon was at all relevant times the Sheriff of Montgomery County. Defendant Tim Jordon was at all relevant times an Officer with the Montgomery County Sheriff's Department. Jeff Jordon and Tim Jordon are Trenton Jordon's nephews. Finally, Defendant John Robinson was at all relevant times a Deputy Sheriff with the Montgomery County Sheriff's Department.

**FACTS**

On the pending motion to dismiss, Plaintiff's factual allegations are taken as true. This controversy arose in relation to Plaintiff's arrest for the alleged theft of a hunting dog originally belonging to Defendant Trenton Jordon. Plaintiff alleges that he and Trenton Jordon used to go bird hunting together and in early 2005 Trenton Jordon asked Plaintiff to train a dog that Trenton Jordon owned. (Sec. Am. Compl. ¶¶ 13-21, docket no. 41.) Despite Plaintiff's objections, Trenton Jordon left the dog at Plaintiff's former residence, where Plaintiff's estranged wife then resided. (*Id.* ¶¶ 17-21.) Trenton Jordon left the dog in a dog pen in the back yard without Plaintiff's wife's knowledge, and subsequently told Plaintiff he didn't care what happened to the dog. (*Id.*) Specifically, Plaintiff alleges that Trenton Jordon told him to "just get rid of the SOB. Take him to the pound, shoot him, or give him away. I do not care." (*Id.* ¶ 21.) Plaintiff's son Ben picked up the dog and took it to his home, where he cared for it, including paying for expensive veterinary services for the dog. (*Id.* ¶ 22.)

Plaintiff alleges that after about a year, on a single occasion and while highly intoxicated, Trenton Jordon demanded that Plaintiff return the dog to him. (*Id.* ¶¶ 23-24.) Plaintiff refused to return the dog. On February 9, 2006, on orders from Defendant Tim Jordon (Trenton Jordon's nephew), Defendant Robinson went to Plaintiff's place of business and told Plaintiff that if he did not immediately hand over the dog he would be arrested. (*Id.* ¶¶ 40-44.) The complaint further alleges that "Robinson also told Plaintiff that, 'since the ownership of the dog is in dispute, you

3

should return the dog, and then file a civil suit against Trenton Jordon.  This is a civil matter, not something for you to get arrested over' (or words to that effect)." (*Id.* ¶ 45.)  Plaintiff refused to turn over the dog, and Robinson immediately arrested Plaintiff for felony larceny of a dog.  (*Id.* ¶ 46.)

Plaintiff alleges that Robinson also threatened to arrest Plaintiff's son Ben and Ben's wife*.*  (*Id.* ¶¶ 49-51.)  More specifically, Plaintiff alleges that on February 9 after Plaintiff's arrest, Defendant Robinson told Ben that Ben needed to get his hands on some funds because Ben and his wife were going to be arrested for aiding and abetting Plaintiff if they did not return the dog to Trenton Jordon.  (*Id.* ¶ 49-50.)  Defendant Robinson also allegedly told Ben and his wife that if he and his wife were arrested, the Department of Social Services would take custody of their small child.  (*Id.* ¶ 51.)

Immediately after Robinson threatened Ben and his wife, the dog was surrendered to the Montgomery County Sheriff's Department, and on or around March 9, 2006, a member of the Sheriff's Department transferred custody of the dog to Trenton Jordon. (*Id.* ¶¶ 52-53.)  Plaintiff alleges that Defendant Robinson was the only witness to testify before the grand jury regarding the alleged larceny of the dog, although at the time of his testimony Robinson had no first-hand knowledge about the alleged larceny.  (*Id.* ¶¶ 54-55.)  Plaintiff notes that the superseding indictment that was based on Robinson's testimony alleges that the offense of "unlawfully, willfully and feloniously" stealing the dog took place during the period "between

4

March 1, 2005–February 9, 2006." (*Id.* ¶ 54.) In January 2009, after deliberating for only thirty minutes, a jury rendered a verdict of "not guilty" on the charge against Plaintiff for felony larceny of a dog. (*Id.* ¶¶ 56-57.)

Plaintiff subsequently brought this action pursuant to North Carolina state law and 42 U.S.C. § 1983,[1] claiming that his arrest was made without probable cause and was thus an unconstitutional seizure, and that the arrest and subsequent criminal proceedings were the product of a conspiracy between the Defendants to deprive Plaintiff of his Fourth Amendment rights. Plaintiff filed his original complaint on January 7, 2009, and amended his complaint on January 21, 2009. Despite proper service, Defendant Robinson failed to answer the complaint, and Plaintiff moved for entry of default on February 20, 2009, which was granted on February 23, 2009. Defendant Robinson filed a motion to set aside that entry along with a supporting brief on March 9, 2009. Defendants then filed a motion to dismiss the amended complaint on March 20, 2009.

---

[1] 42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.As the court will discuss *infra*, the original complaint also named the "Montgomery County Sheriff's Department" as a Defendant, but the Sheriff's Department is not named as a Defendant in the second amended complaint.

Before any ruling on the motion to dismiss the amended complaint, Plaintiff was again granted leave to amend his complaint and filed a second amended complaint on July 10, 2009, which names Trenton Jordon, Tim Jordon, Sheriff Jeff Jordon and John Robinson as Defendants.[2] The second amended complaint[3] alleges the following causes of action: (1) (First Cause of Action) Common Law Abuse of Process against Trenton Jordon; (2) (Second Cause of Action) Common Law Malicious Prosecution against Trenton Jordon; (3) (Third Cause of Action) Malicious Prosecution and Seizure in Violation of 42 U.S.C. § 1983 against Tim Jordon, John Robinson, and Jeff Jordon; and (4) (Fourth Cause of Action) Conspiracy in Violation of 42 U.S.C. § 1983 against Trenton Jordon, Tim Jordon, John Robinson, and Jeff Jordon. On July 24, 2009, Defendants Tim Jordon, Jeff Jordon, John Robinson, and the Montgomery County Sheriff's Department filed a motion to dismiss the second amended complaint, and that motion is now pending before the undersigned. Defendant Trenton Jordon has not joined in the pending motion to dismiss.

---

[2] As the court will discuss *infra*, the original complaint also named the "Montgomery County Sheriff's Department" as a Defendant, but the Sheriff's Department is not named as a Defendant in the second amended complaint.

[3] The undersigned will hereinafter refer to the second amended complaint as "the complaint."

**DISCUSSION**

***I. Defendant Robinson's Motion to Set Aside the Clerk's Entry of Default***

As noted, Plaintiff has obtained an entry of default by the Clerk of Court as to Defendant John Robinson, and Defendant Robinson has filed a motion to set aside the entry of default. Rule 55(c) of the Federal Rules of Civil Procedure provides that the court may set aside an entry of default for "good cause" shown. FED. R. CIV. P. 55(c). The factors used to determine if "good cause" warrants setting aside an entry of default are whether: (1) the defendant has a meritorious defense to the complaint's allegations; (2) the defendant acted with reasonable promptness to set aside the entry of default; (3) the defendant has a history of dilatory action; (4) the defendant–not his attorney–was responsible for the default; (5) the plaintiff would be prejudiced by the defendant's delay; and (6) less drastic sanctions are available. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). The Fourth Circuit has held that Rule 55 should be liberally construed, and all doubts about whether relief should be granted are to be resolved in favor of setting aside the default so the case may be heard on the merits. *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969); *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).

I find that Defendant Robinson has shown sufficient good cause to set aside the entry of default. That is, Defendant Robinson has filed an affidavit in response to the entry of default denying the alleged claims (docket no. 22). Defendant

7

Robinson has thus made "a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). Second, Defendant Robinson acted with reasonable promptness to set aside the entry of default. Default was entered February 23, 2009, and Defendant moved to set aside the entry on March 9, 2009. Third, there is no evidence of dilatory action by Defendant Robinson, as he timely filed his Rule 55 motion and has timely filed further responsive pleadings. Finally, Plaintiff will not be prejudiced if the entry of default is set aside, as Plaintiff has included Defendant in his second amended complaint, the litigation is in its early stages, and the parties have not yet engaged in discovery. In sum, Defendant Robinson's motion to set aside the entry of default will be granted.

### *II. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint*

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

8

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*).

<u>Whether Defendants Are Being Sued in Their Individual or Official Capacities</u>

I first note that the caption of the complaint does not indicate whether Plaintiff is suing Defendants in their individual capacities, their official capacities, or both. The complaint states that the individual Defendants were all acting "in their official capacities." (Sec. Am. Compl. ¶ 1.) On the other hand, the complaint alleges that Defendant Tim Jordon, Jeff Jordon, and John Robinson are "persons" within the meaning of 42 U.S.C. § 1983. (Sec. Am. Compl. ¶ 37.) Furthermore, whereas the original complaint named the "Montgomery County Sheriff's Department" as a Defendant, Defendant has dismissed the Sheriff's Department as a named Defendant in the second amended complaint. *See Gantt v. Whitaker*, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002). Therefore, it appears that Plaintiff's claims are against Defendants in their individual capacities only. The court will now turn to the motion to dismiss.

9

### A. Dismissal of Montgomery County Sheriff's Department

As noted, Plaintiff's original complaint named the Montgomery County Sheriff's Department as a Defendant. The Sheriff's Department is not included as a Defendant in Plaintiff's second amended complaint. In any event, it appears that the Montgomery County Sheriff's Department is not an entity capable of being sued. *See* FED. R. CIV. P. 17(b). For these reasons, it will be recommended that the Montgomery County Sheriff's Department be dismissed as a Defendant.

### B. Section 1983 Claim Based on Malicious Prosecution and Seizure in Violation of the Fourth Amendment

"To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States." *See Green v. Maroules*, 211 F. App'x 159, 161 (4th Cir. 2006). To this extent, Section 1983 does not itself confer any rights; it is merely a vehicle through which a plaintiff may sue to recover for violations of a federal right that can be found in the Constitution or other federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Therefore, the first task in assessing any Section 1983 action is to determine the precise constitutional right that has allegedly been infringed upon. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Here, Plaintiff purports to bring a Fourth Amendment claim for "malicious prosecution and seizure." This circuit's court of appeals has stated, however, that

> there is no such thing as a "§ 1983 malicious prosecution" claim. What we termed a "malicious prosecution" claim in *Brooks* is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action.

*Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)); *see also Albright v. Oliver*, 510 U.S. 266, 271, 275 (1994) (holding that a Section 1983 claim for unlawful initiation of criminal proceedings may be brought only under the Fourth Amendment).[4] Thus, to state a purported Section 1983 "malicious prosecution" claim, a plaintiff must allege a seizure that violates the Fourth Amendment–that is, a seizure made without probable cause. *See Henderson v. Simms*, 223 F.3d 267, 272 (4th Cir. 2000); *Green*, 211 F. App'x at 161; *Brooks*, 85 F.3d at 183. Furthermore, as noted, the plaintiff must allege that the resulting criminal proceeding has been terminated in the plaintiff's favor.

Here, Plaintiff alleges that Defendant Robinson, on orders from Defendant Tim Jordon, arrested Plaintiff without probable cause and that Defendants knew there was no probable cause. (Sec. Am. Compl. ¶¶ 39, 46.) Plaintiff further alleges that he was found not guilty in the subsequent trial. (*Id.* ¶ 57.) Given that Plaintiff has alleged that Defendant Robinson, acting on orders from Defendant Tim Jordon,

---

[4] Under North Carolina law, there are four elements in a claim for malicious prosecution: (1) initiation by the defendant of a criminal proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause in the criminal proceeding; and (4) termination of the criminal proceeding in favor of the plaintiff. *Best v. Duke Univ.*, 337 N.C. 742, 749 (1994).

11

seized him "pursuant to a legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor," this court finds that Plaintiff has set forth sufficient facts to state a claim for relief against Defendants Tim Jordon and John Robinson. *Brooks*, 85 F.3d at 183.

Plaintiff, however, has failed to plead sufficient facts to state a Fourth Amendment claim as to Jeff Jordon. First, Plaintiff has failed to allege, other than in conclusory terms, any personal involvement by Defendant Jeff Jordon related to Plaintiff's arrest. Plaintiff alleges only that Defendant Jeff Jordon conspired with the other Defendants to bring false charges and participated in the initiation of those charges. (Sec. Am. Compl. ¶¶ 4, 38.) Furthermore, it is well settled that Jeff Jordon cannot be held liable, merely based on his role as a supervisor to Defendants Tim Jordon and John Robinson, in a Section 1983 action. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978) (stating that respondeat superior does not apply in Section 1983 actions). For these reasons, it will be recommended that the court deny the motion to dismiss Plaintiff's malicious prosecution and seizure claim as to Defendants Tim Jordon and John Robinson, and grant it with respect to Defendant Jeff Jordon.

### C. Conspiracy under 42 U.S.C. § 1983

To state a claim for civil conspiracy under Section 1983, a party must allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a

constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). It is well settled that conclusory allegations of a conspiracy fail to state a claim for relief. *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1007 (4th Cir. 1987). Rather, the plaintiff must allege sufficient facts that would "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," *Hinkle*, 81 F.3d at 421. Therefore, as the Supreme Court recently noted in *Twombly*, general allegations of conspiracy are not sufficient. *See Twombly*, 550 U.S. at 556-57. Nevertheless, a plaintiff may survive a motion to dismiss if the plaintiff alleges some facts that "raise a right to relief above the speculative level." *Id.* at 555.

In support of the conspiracy claim, Plaintiff alleges that Defendants conspired to violate his constitutional rights by arresting him for felony larceny without probable cause and that Defendants knew they did not have probable cause to arrest him. If Plaintiff's allegations are taken as true as they must be on the motion to dismiss, then he has shown that Trenton Jordon gave Plaintiff the dog and told him he didn't care what happened to the dog; therefore, when initiating criminal proceedings against Plaintiff, Trenton Jordon knew that Plaintiff had not stolen the dog. Plaintiff has also alleged that Trenton Jordon is the uncle of two of the other Defendants–Tim Jordon (who specifically ordered Defendant Robinson to arrest Plaintiff) and Jeff Jordon (the Sheriff of Montgomery County). Of course, the inference that Plaintiff attempts to draw here is that Defendants knew all along that Plaintiff had never

13

stolen the dog and that they simply arranged to have Plaintiff arrested for larceny of the dog so that Tim and Jeff's uncle Trenton could get his dog back.

The familial relationship between the Jordons perhaps alone does not raise the possibility of a conspiracy by Defendants to violate Plaintiff's Fourth Amendment rights to more than a speculative level.[5]  Nevertheless, the complaint also alleges that Defendants, specifically Defendant Robinson, attempted to intimidate potential witnesses, including Plaintiff's son Ben and Ben's wife.  (*Id.* ¶ 64.)   Plaintiff also alleges that as far back as October 1999, the Sheriff's office "evinced an extremely negative attitude against Plaintiff and his son Ben Lewis." (*Id.* ¶ 10.) Plaintiff alleges that sometime in October 1999, Plaintiff called and spoke with Defendant Tim Jordon about alleged excessive use of force inflicted by a Montgomery County Sheriff's Deputy who had ticketed Plaintiff's son Ben for speeding.  (*Id.* ¶ 11.)  In response, in a October 27, 1999, letter from Defendant Tim Jordon to Plaintiff, Tim Jordon accused Plaintiff and his son of "having a sour outlook on life," and having "no respect for authority."  (*Id.* ¶ 12.)

Specifically as to Defendant Robinson, Plaintiff alleges that Robinson threatened Plaintiff and his relatives, (*id.*), and in concert with the other Defendants

---

[5] Although there is scant case law on familial relationships in civil conspiracy actions under Section 1983, criminal conspiracy case law provides some guidance.  In such cases, courts have found that "[c]ircumstantial evidence tending to prove a conspiracy may consist of a [conspirator's] 'relationship with other members of the conspiracy,'" *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996) (quoting *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984)), but that a conspiracy cannot be proven solely by family relationship or other types of close association.  *United States v. Brodie*, 403 F.3d 123, 151 (3d Cir. 2005); *United States v. Williams-Hendricks*, 805 F.2d 496, 502-03 (5th Cir. 1986).

14

conspired to arrest Plaintiff without probable cause, (*id.* ¶¶ 38-39.)  Plaintiff also alleges that Robinson was the only witness to testify before the grand jury regarding the alleged larceny of the dog, but that at the time that Robinson testified he had no first-hand knowledge about the alleged larceny.

Plaintiff's factual allegations regarding the familial relationship between the three Jordon Defendants, coupled with the factual allegations of a history of sour relations between Plaintiff and the Sheriff's Department, Robinson's alleged testimony before the grand jury without any first-hand knowledge of the events surrounding the alleged dog larceny, and the alleged intimidation of potential witnesses to the alleged dog larceny, are enough to survive the pending motion to dismiss on Plaintiff's claim that Defendants conspired to violate Plaintiff's Fourth Amendment rights by arresting him without probable cause on the charge of felony larceny of a dog.[6]  In other words, Plaintiff's factual allegations are sufficient to raise

---

[6] As noted, Trenton Jordon is a private individual and not an employee of the Sheriff's Department.  Plaintiff has alleged that Trenton Jordon is the person who initiated the criminal proceedings against Plaintiff by notifying the Sheriff's Department about the alleged dog larceny.  A private party involved in a conspiracy with a state actor can be liable under Section 1983.  *Hessami v. Corp. of Ranson*, 170 F. Supp. 2d 626, 634 (N.D. W. Va. 2001).  To sustain such a claim, however, the plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents.  *See id.*  The Supreme Court has held, however, that a private actor's mere invocation of state legal procedures is not enough to constitute joint participation or conspiracy with officials under Section 1983.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982).  In other words, the "mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983." *Lockhead v. Weinstein*, 24 F. App'x 805, 806 (9th Cir. 2001).  As noted, Trenton Jordon has not joined in the motion to dismiss; therefore, the court need not address the conspiracy claim as it applies separately to Trenton Jordon as a private actor.  In any event, because of the special

15

Plaintiff's conspiracy claim against Defendants above the speculative level, as required by *Twombly*.  In sum, for all these reasons it will be recommended that the court deny Defendants' motion to dismiss Plaintiff's Section 1983 conspiracy claim.

**CONCLUSION**

For the reasons stated herein, Defendant Robinson's motion (docket no. 20) to set aside the entry of default is **GRANTED**.  Furthermore, **IT IS RECOMMENDED** that the court (1) deny the motion to dismiss the Section 1983 conspiracy claim; (2) grant the motion to dismiss the Section 1983 "malicious prosecution" claim as to Defendant Jeff Jordon; (3) and deny the motion to dismiss the Section 1983 "malicious prosecution" claim as to Defendants Tim Jordon and John Robinson (docket no. 42).  If the court adopts this recommendation, the following claims will remain: the common law abuse of process and malicious prosecution claims against

---

familial relationship between Trenton Jordon and Tim and Jeff Jordon, the facts are sufficient to sustain the conspiracy claim against Trenton Jordon as well.  *See id.* at 807 (noting that a claim for conspiracy may lie where a private party furnishing information to law enforcement officials had some "special relationship with law-enforcement officials" that influenced whether officials decided to prosecute the plaintiff).

Defendant Trenton Jordon (First and Second Causes of Action); the Section 1983 malicious prosecution claim against Defendants Tim Jordon and John Robinson (Third Cause of Action); and the Section 1983 conspiracy claim against all Defendants (Fourth Cause of Action).

_____
WALLACE W. DIXON
United States Magistrate Judge

November 4, 2009