# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JENNINGS RAY LEWIS, ) | |
| ) | |
| Plaintiff, pro se, ) | **MEMORANDUM OPINION** |
| ) | **AND RECOMMENDATION** |
| v. ) | |
| ) | 1:09CV21 |
| TRENTON JORDON, TIM JORDON, ) | |
| JEFF JORDON, and JOHN E. ) | |
| ROBINSON, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on a motion for summary judgment (docket no. 63) by Defendants Tim Jordon, Jeff Jordon, and John E. Robinson. Plaintiff has failed to respond in opposition to Defendants' motion. Despite Plaintiff's failure to respond, the matter is ripe for disposition as the period in which to respond has lapsed. Since the parties have not consented to the jurisdiction of a magistrate judge, I must deal with Defendants' motion by way of recommendation. For the reasons discussed herein, I will recommend that the court grant Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Jennings Ray Lewis ("Plaintiff") initiated this action against Defendants Trenton Jordon, Tim Jordon, Jeff Jordon, John E. Robinson, and the Montgomery County Sheriff's Department (collectively "Defendants") on January 7, 2009, alleging,

among other claims, malicious prosecution and civil conspiracy after Plaintiff was allegedly arrested and charged without probable cause for felony larceny of a dog (docket no. 1). On January 21, 2009, Plaintiff amended his original complaint (docket no. 4), and on July 10, 2009, this court granted Plaintiff leave to file a second amended complaint. Plaintiff's second amended complaint (docket no. 41) includes the following claims: (1) (First Cause of Action) Common Law Abuse of Process against Trenton Jordon; (2) (Second Cause of Action) Common Law Malicious Prosecution against Trenton Jordon; (3) (Third Cause of Action) Malicious Prosecution and Seizure in Violation of 42 U.S.C. § 1983 against Tim Jordon, John E. Robinson, and Jeff Jordon; and (4) (Fourth Cause of Action) Conspiracy in Violation of 42 U.S.C. § 1983 against Trenton Jordon, Tim Jordon, John Robinson, and Jeff Jordon.

On July 24, 2009, Defendants Tim Jordon, Jeff Jordon, and John E. Robinson filed an answer and a corresponding motion to dismiss the second amended complaint (docket no. 42). Although Plaintiff did not name the Montgomery County Sheriff's Department as a Defendant in his second amended complaint, the Sheriff's Department also joined in Defendants' motion to dismiss. Subsequently, on November 4, 2009, the undersigned issued a recommendation and order setting aside a prior entry of default against Defendant John E. Robinson and recommending that Defendants' motion to dismiss be granted in part and denied in part (docket no. 45). In response to the recommendation, Plaintiff filed a motion to amend the

2

amended complaint (docket no. 47). On January 25, 2010, Judge Schroeder entered an order partially adopting the recommendation of the undersigned (docket no. 53). Furthermore, Judge Schroeder granted Plaintiff's motion to amend.[1]

Following Judge Schroeder's partial adoption of the undersigned's recommendation, the following claims remain: (1) (First and Second Causes of Action) Common Law Abuse of Process and Malicious Prosecution against Defendant Trenton Jordon; (2) (Third Cause of Action) Malicious Prosecution and Seizure in Violation of 42 U.S.C. § 1983 against Defendants Tim Jordon, Jeff Jordon, and John E. Robinson; and (3) (Fourth Cause of Action) Conspiracy in Violation of 42 U.S.C. § 1983 against all Defendants. In the instant motion, Defendants Tim Jordon, Jeff Jordon, and John E. Robinson seek summary judgment with respect to all claims made against them.[2] Despite receiving notice of the consequences of inaction, Plaintiff has failed to reply in opposition to Defendants' motion for summary judgment.[3]

---

[1] Despite the court's granting of the motion to amend, Plaintiff never filed a third amended complaint.

[2] Defendant Trenton Jordon did not join the moving Defendants in the pending summary judgment motion. As such, the court will only address the third and fourth causes of action, as both the first and second causes of action are comprised solely of allegations made against Trenton Jordon.

[3] On October 4, 2010, the clerk of court mailed the standard *Roseboro* letter to Plaintiff, notifying him that he had the right to respond to Defendants' motion within twenty days of being served with the motion (docket no. 65). Plaintiff did not file a response.

**FACTS**

Plaintiff is a resident of Montgomery County, North Carolina. Defendant Trenton Jordon is also a resident of Montgomery County. Plaintiff identifies Trenton Jordon as the individual citizen who initiated the criminal proceedings ("larceny of a dog") against Plaintiff. Defendant Jeff Jordon was at all relevant times the Sheriff of Montgomery County. Defendant Tim Jordon was at all relevant times employed as the Chief Deputy/Major with the Montgomery County Sheriff's Department. Jeff Jordon and Tim Jordon are Trenton Jordon's nephews. Finally, Defendant John Robinson was at all relevant times a Detective Sergeant with the Montgomery County Sheriff's Department.

This controversy arose in relation to Plaintiff's arrest for the alleged theft of a hunting dog originally belonging to Defendant Trenton Jordon. Plaintiff alleges that he and Trenton Jordon used to go bird hunting together and, in early 2005, Trenton Jordon asked Plaintiff to train a dog that Trenton Jordon owned. (Sec. Am. Compl. ¶¶ 13-21, docket no. 41.) Despite Plaintiff's objections, Trenton Jordon left the dog at Plaintiff's former residence, where Plaintiff's estranged wife then resided. (*Id.* ¶¶ 17-21.) Trenton Jordon left the dog in a dog pen in the back yard without Plaintiff's wife's knowledge, and subsequently told Plaintiff he didn't care what happened to the dog. (*Id.*) Specifically, Plaintiff alleges that Trenton Jordon told him to "just get rid of the SOB. Take him to the pound, shoot him, or give him away. I do not care." (*Id.* ¶ 21.) Plaintiff's son Ben picked up the dog and took it to his home, where he cared

4

for it.  (*Id.* ¶ 22.)  Plaintiff alleges that after about a year, on a single occasion and while highly intoxicated, Trenton Jordon demanded that Plaintiff return the dog to him.  (*Id.* ¶¶ 23-24.)  Plaintiff refused to return the dog.  On February 9, 2006, on orders from Defendant Tim Jordon (Trenton Jordon's nephew), Defendant Robinson went to Plaintiff's place of business and told Plaintiff that if he did not immediately hand over the dog he would be arrested.  (*Id.* ¶¶ 40-44.)  The complaint further alleges that "Robinson also told Plaintiff that, 'since the ownership of the dog is in dispute, you should return the dog, and then file a civil suit against Trenton Jordon.  This is a civil matter, not something for you to get arrested over' (or words to that effect)."  (*Id.* ¶ 45.)  Plaintiff refused to turn over the dog, and Robinson immediately arrested Plaintiff for felony larceny of a dog.  (*Id.* ¶ 46.)

Plaintiff alleges that Robinson also threatened to arrest Plaintiff's son Ben and Ben's wife.  (*Id.* ¶¶ 49-51.)  More specifically, Plaintiff alleges that on February 9 after Plaintiff's arrest, Defendant Robinson told Ben that Ben needed to get his hands on some funds because Ben and his wife were going to be arrested for aiding and abetting Plaintiff if they did not return the dog to Trenton Jordon.  (*Id.* ¶¶ 49-50.)  Defendant Robinson also allegedly told Ben and his wife that if he and his wife were arrested, the Department of Social Services would take custody of their young child.  (*Id.* ¶ 51.)

Immediately after Robinson threatened Ben and his wife, the dog was surrendered to the Montgomery County Sheriff's Department, and on or around

March 9, 2006, a member of the Sheriff's Department transferred custody of the dog to Trenton Jordon. (*Id.* ¶¶ 52-53.) Plaintiff alleges that Defendant Robinson was the only witness to testify before the grand jury regarding the alleged larceny of the dog, although at the time of his testimony Robinson had no first-hand knowledge about the alleged larceny. (*Id.* ¶¶ 54-55.) In January 2009, after deliberating for thirty minutes, a jury rendered a verdict of "not guilty" on the charge against Plaintiff for felony larceny of a dog. (*Id.* ¶¶ 56-57.)

Defendants agree that Plaintiff and Trenton Jordon were "bird hunting buddies," and that Trenton Jordon asked Plaintiff to train his dog. Beyond those facts, however, Defendants' version of the events giving rise to the controversy differs dramatically from Plaintiff's. Defendants claim that Plaintiff agreed to train Trenton Jordon's dog and, in accordance with that agreement, Plaintiff took custody of the dog. (Defs. Br. in Supp. of Mot. for Summ. J., Ex. 2 ¶ 5.) Approximately one year later, Defendants allege that, despite multiple requests made by Trenton Jordon, Plaintiff refused to return the dog. (*Id.*) Defendant Trenton Jordon then allegedly requested that the Montgomery County Sheriff's Department investigate the matter. (*Id.* ¶ 6.) Defendants claim that both Jeff Jordon and Tim Jordon advised Trenton Jordon that, "in accordance with applicable laws" and the duties and responsibilities of their jobs, no one at the Montgomery County Sheriff's Department would threaten anyone or take any action not supported by law. (*Id.*) Defendants also claim that, as part of the Sheriff's Department's investigation of the controversy, Defendant Tim

Jordon discussed the situation with Assistant District Attorney Kristen Allen, who advised him that the matter satisfied the elements for larceny of a dog. (*Id.* ¶ 7.)

On February 9, 2006, Defendant John E. Robinson and Captain Andre Garner went to Plaintiff's place of business to request that Plaintiff return the dog. Defendants allege that Plaintiff refused to return the dog, and that he, instead, insisted that Defendant Robinson arrest him. (*Id.* ¶ 11.) Defendants also allege that Defendant Robinson took Plaintiff to his office, where he made a final request that Plaintiff return the dog and deal with the case as a civil matter, rather than as a criminal matter. (*Id.*) Defendants claim that Plaintiff still refused to return the dog and continued to demand to be arrested. (*Id.*) At that time, according to Defendants, Defendant Robinson had no choice but to place Plaintiff under arrest. (*Id.*) Defendant Robinson denies that he subsequently threatened Plaintiff's son and his son's wife. (Aff. of John E. Robinson ¶ 10.) Likewise, Defendants Jeff Jordon and Tim Jordon deny that they ever directed Defendant Robinson to do so. (Defs. Br. in Supp. of Mot. for Summ. J., Ex. 2, ¶¶ 14-15.)

**DISCUSSION**

**Summary Judgment Standard**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward

and demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).  Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim.  *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

As noted, Plaintiff did not respond to the summary judgment motion; however, an uncontested motion for summary judgment is not automatically granted.  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994).  Instead, the moving party's facts are deemed uncontroverted, and the court determines whether the moving party is entitled to a judgment as a matter of law.  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (stating that "the moving party must still show that the uncontroverted facts entitle him to a judgment as a matter of law").  "In determining if summary judgment is appropriate, the court should look to the movant's own papers," as well as to the record, to determine whether a genuine issue exists as to any material fact.  *See Campbell*, 21 F.3d at 55-56.  Rule 56(e) permits

the court to consider "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ." *Celotex Corp.*, 477 U.S. at 324; *see also Campbell*, 21 F.3d at 55 ("If [the moving party] goes forward and supports his motion with post-pleading material, then the non-moving party cannot rest on his pleadings and generally must take some positive action in response.").

Here, Defendants' motion for summary judgment is supported by affidavits submitted by Defendants Jeff Jordon, Tim Jordon, and John E. Robinson. Conversely, Plaintiff has not responded to Defendants' motion, nor has he submitted anything beyond his pleadings. As such, the court must analyze Defendants' motion based solely on Defendants' facts and supporting evidence.

**Malicious Prosecution and Seizure in Violation of 42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States." *See Green v. Maroules*, 211 F. App'x 159, 161 (4th Cir. 2006). Section 1983 does not itself confer any rights; it is merely a vehicle through which a plaintiff may sue to recover for violations of a federal right that can be found in the Constitution or other federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Therefore, the first task in assessing any Section 1983 action is to determine the precise constitutional right that has allegedly been infringed. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Here, Plaintiff purports to bring a Fourth Amendment claim for "malicious prosecution and seizure." This circuit's court of appeals has stated, however, that

> there is no such thing as a "§ 1983 malicious prosecution" claim. What we termed a "malicious prosecution" claim in *Brooks* is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action.

*Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)); *see also Albright v. Oliver*, 510 U.S. 266, 271, 275 (1994) (holding that a Section 1983 claim for unlawful initiation of criminal proceedings may be brought only under the Fourth Amendment). Thus, to make a successful Section 1983 "malicious prosecution" claim, a plaintiff must establish that he was the victim of a seizure that violated the Fourth Amendment–that is, a seizure made without probable cause. *See Green*, 211 F. App'x at 161; *Brooks*, 85 F.3d at 183. Furthermore, as noted, the plaintiff must also prove that the resulting criminal proceeding terminated in the plaintiff's favor.

Here, Defendants do not dispute that the related criminal proceeding was disposed of in Plaintiff's favor. They do, however, dispute Plaintiff's allegation that he was arrested without probable cause. In the second amended complaint, Plaintiff alleges that Defendant Robinson, on orders from Defendant Tim Jordon, arrested Plaintiff without probable cause and that Defendants knew there was no probable cause. (Sec. Am. Compl. ¶¶ 39, 46.) Conversely, Defendants claim that Plaintiff's

10

arrest was the result of a valid investigation, made in accordance with the law. Furthermore, Defendants allege that before Plaintiff's arrest, Tim Jordon discussed the matter with Assistant District Attorney Kristen Allen, who advised him that the situation satisfied the elements for larceny of a dog. Defendants have submitted affidavits to support their claims. Plaintiff, however, has failed to come forward with any evidence to support his allegations. Because Plaintiff has failed to submit any evidence that he was arrested without probable cause, his Section 1983 malicious prosecution claim fails, and the moving Defendants are entitled to summary judgment on this claim.

**Conspiracy in Violation of 42 U.S.C. § 1983**

To establish a claim for civil conspiracy under Section 1983, a party must prove "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). It is well settled that conclusory allegations of a conspiracy fail to state a claim for relief. *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1007 (4th Cir. 1987). Rather, the plaintiff must allege sufficient facts that would "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," *Hinkle*, 81 F.3d at 421.

In support of the conspiracy claim, Plaintiff alleges that Defendants conspired to violate his constitutional rights by arresting him for felony larceny without probable cause and that Defendants knew they did not have probable cause when they arrested him. The only evidence in the record that supports Plaintiff's allegation is the familial relationship between Defendants Trenton Jordon, Tim Jordon, and Jeff Jordon. Evidence of a familial relationship alone, however, is not sufficient to support a conspiracy claim. *See United States v. Brodie*, 403 F.3d 123, 151 (3$^d$ Cir. 2005). As such, Plaintiff's conspiracy claim fails to state a claim for relief, and thus summary judgment in favor of all Defendants is proper as to this claim.

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that the court grant Defendants' motion for summary judgment (docket no. 63) and dismiss with prejudice Plaintiff's claims against the moving Defendants.[4]

                                                */s/ Wallace W. Dixon*
                                                WALLACE W. DIXON
                                                United States Magistrate Judge

January 13, 2011

---

[4] If the court adopts the recommendation of the undersigned, the only remaining claims will be those against Defendant Trenton Jordon for common law abuse of process and malicious prosecution, in which case the court should decline to exercise supplemental jurisdiction over these remaining state law claims under 28 U.S.C. § 1367(c).